## McBride v. Berryman et al., Commissioners

452

Before Brownson, P. J., and Hughes and Gibson, JJ.
*Harold V. Fergus,* for plaintiff.
*David H. Weiner,* for defendants.

BROWNSON, P. J., February 19, 1938.—In this case and a companion case the following questions are raised:

(*a*) Is a constable who was elected and took office before the passage of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, entitled to be paid for attendance at elections (November elections) occurring during his term of office, notwithstanding the provisions in that act requiring him so to attend the same without compensation?

(*b*) Is such a constable similarly entitled to be paid for attendance at primary elections?

(*c*) In a case in which the constable's bailiwick is composed of several separate election districts, and, in order that the polling places in each and all of such districts may be attended as required by law, deputies have been appointed who were so in attendance, respectively, at different polling places (the constable and his deputies together making up a number of officers equal to the number of election districts in the bailiwick) is compensation for such services of the deputies payable (provided it be held that the constable himself is entitled to compensation for his own services) either directly to the deputies themselves, or through or to the constable who appointed them?

(*a*) The first of these questions we answer in the affirmative. The duty of attending the elections to which it refers was not a new duty imposed by the Act of 1937. Previous legislation had created this duty, and it was in existence when the Act of 1937 was passed, which merely reaffirmed and continued the duty; and a fee bill then in effect had provided compensation for its performance. Therefore, when the Act of 1937 directed that this duty should be performed without pay, and repealed the provisions of the fee bill providing for such compensation, such enactments, as applied to constables then in office, amounted to a decrease in the emoluments of the office after the officer's election or appointment, and cannot constitutionally be applied to such constables. Such a constable is therefore entitled to be paid for his attendance at elections occurring after June 3, 1937, and during the term of office for which he was elected prior to that date, at the rate of compensation fixed by the fee bill in force at the time of his election. In accord with this conclusion is Noel v. Adams County, 30 D. & C. 444.

(*b*) Upon the second question, relative to the right of a constable to be paid for attendance at a primary election (i. e. a constable who was in office at the date of passage of the Act of June 3, 1937, supra), the view was taken in Strunk v. Hershey et al., 30 D. & C. 396, that prior to June 3, 1937, there was no duty of the constable to attend a primary election, and the first statute purporting to impose such a duty was the Act of 1937 itself; and that this act, insofar as it attempted to require a constable already in office to perform this duty without compensation for either his work or any expenses incident to rendering the service, was so wholly unconstitutional and void that it failed to impose effectively upon such a constable this duty of attending a primary election at all, and hence the officer's attendance at a primary, occurring during the term of office that was in existence when the act was passed, was purely voluntary on his part, and a

thing for which no compensation has been provided by law. For this view of the matter, the case of Commonwealth v. Kromer, 4 Pa. C. C. 241, was relied on. In that case, a statute having required constables to perform certain new services in connection with the liquor laws, the court held the enactment entirely void as applying to constables previously elected, saying that to impose upon an officer already in office new duties for the performance of which, and the expenses incident thereto, no compensation was provided, would be unconstitutional, and as, neither in that statute nor in the fee bill under which the officer was working, had any such compensation been provided, he was not bound to obey the statute by performing the prescribed service.

We are ready to agree that to require this constable to perform a new duty without any compensation therefor, and to pay expenses incident to its performance out of the emoluments received for other official services, would amount to a diminution of his emoluments after his election, and would therefore be unconstitutional. But, even if it be conceded that there was no duty previously imposed, by implication or otherwise, to attend primaries, still in case we can, by any fair construction, derive from his fee bill, as this existed prior to June 3, 1937, authority for compensating him for attendance during the primary election and the counting of the votes cast thereat, we believe it would be a sounder and more reasonable view to conclude that he should be paid for such attendance, rather than to come to the conclusion that a service considered by the legislature to be necessary, in the interests of the public, need not be performed at all.

The fee bill by which this constable's emoluments were fixed was the Act of July 20, 1917, P. L. 1158, as amended by the Act of May 23, 1919, P. L. 274, which act gave him a fee: "For attending general, special, township, ward, or borough election" of $5; and the act contained a provision that: "For services not herein specially provided

for the same fee may be charged and received as for similar services". Now if it should be conceded that the word "elections", as there used, does not include a primary election (which is not the view taken by Judge Frazer, later chief justice, in the interpretation he gave to the Act of June 27, 1913, P. L. 632, in Nevin v. O'Neil et al., County Commrs., 22 Dist. R. 894) certainly, attendance at a primary is a service similar to attendance at a November election. (The fact that no "similar services" clause could be found in the fee bill of the officer who was a party to Commonwealth v. Kromer, supra, was therein mentioned as a material point in connection with the decision there reached.) We think that if the Act of 1937 had omitted the words "and shall serve at all elections without compensation" and no attempt had been made to repeal any allowances granted in his fee bill, the present plaintiff would be entitled under his fee bill to be paid the same fee for attending the primary election that is specified for attendance at the election in November; and, as those words, and any pro tanto repeal of any part of his fee bill, must be stricken out of the statute *so far as affecting him*, we conclude that he is entitled to be paid for attendance at the primary election held in September 1937. Herein we agree with the ruling to this effect, made by Waychoff, P. J., in Orndoff v. Tague et al., of No. 80 December term, 1937, of the Court of Common Pleas of Greene County.

3. The remaining question relates to pay for the services of deputy constables in attending primary and other elections. The township in and for which the plaintiff McBride is constable is divided into two election precincts, and it was necessary, in order that the requirements of attendance at each of the polling places "during the continuance" of the primary election and of the November election, "and while the votes [were] being counted" might be complied with, to appoint a deputy. Accordingly Jacob Naser was duly appointed as a deputy

by Constable McBride with the approval of the court, and as such deputy he attended in one of the districts. In no. 114, February term, 1938, Naser has sued in his own name to recover pay for the service rendered by him. In the instant case, McBride's action is to obtain payment for the services of both himself and his deputy. The question, therefore, is whether compensation for the deputy's services can be recovered in either of these actions.

So far as concerns Naser, the deputy, it is not stated that his appointment as such was made prior to June 3, 1937, and we therefore assume that it did not precede that date. Accordingly, if he is to be considered as claiming in his own right, he is not in a position to say that there has been any diminution of emoluments since his appointment. On the other hand, if the proper claimant is the constable, McBride, such a question arises, as is hereinafter referred to. The latter view was taken in Orndoff v. Tague, supra, and the constable's right to sue for the service rendered by his deputy was sustained.

Whatever view be taken as to the existence or non-existence, prior to June 3, 1937, of duties, on the part of the constable, in connection with primary elections, the Act of 1937 clearly imposes on the constable the duty of attendance, either personally or by deputy, at the polling place of each election district in his bailiwick, "for the purpose of preserving the peace" during the entire period occupied by the casting and counting of the votes; and by necessary implication it becomes his duty to procure as many deputies as may be necessary to give to each polling place, where the bailiwick embraces more than one district, such attendance. If no compensation be provided for the services of himself and his deputies, the burden will devolve upon him of hiring deputies at his own expense, and he will have to pay for their service out of the fees earned by him for other official work, thus bringing about, in effect, a diminution in the net emoluments of his office. But this is not a permissible result in the case of

Constable McBride, who was elected and took office before the Act of 1937 was passed. Neither a positive statutory provision nor the repeal of a prior statute can constitutionally be allowed to operate so as to have the effect of diminishing the emoluments of an officer whose election or appointment preceded the enactment in question; and hence, as a pro tanto repeal by the Act of 1937 of the provision in the constable's fee bill allowing $5 for the constable and the same amount for each deputy that it may be necessary for him to have in order to man all the polling places in his bailiwick would have an effect upon this constable's emoluments, we believe that such repeal is invalid, as to him and his bailiwick, during his continuance in office, and is so far suspended in its operation until the end of his official term. We therefore think, applying principles that were discussed under the last preceding head, that the deputy's services should be paid for in this case, the same as those of the constable himself.

As the conclusion that we come to is based upon the constitutional rights of the constable, and as the services of the deputy were rendered in that character, by the authority and in the name of the constable, we believe it to be proper, and more appropriate, to allow the money with which to pay for the deputy's service to come to him through the constable, and be collected by means of this mandamus proceeding brought in the latter's name, as was done in Orndoff v. Tague, supra, the purpose of this mandamus action being to prevent McBride's net compensation from being unconstitutionally diminished.

And now, February 19, 1938, judgment on the demurrer is entered in favor of plaintiff, and a writ of peremptory mandamus is awarded, requiring defendants to pay to plaintiff the sum of $20 for the attendance of himself and his deputy at the two polling places in South Strabane Township on the respective dates of the primary election (September 14, 1937), and the November election (November 2, 1937).